UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**Mac Tools,**

    **Petitioner,**

                                            Case No. 2:11-cv-940
   v.                                     Judge Smith
                                            Magistrate Judge Abel

**Andres Diaz III,** *et al.***,**

    **Respondents.**


**OPINION AND ORDER**

This matter is before the Court on Petitioner Mac Tools' Petition to Compel Arbitration (Doc. 2) and the Motion to Dismiss for Failure to State a Claim filed by Respondents Andres Diaz III and Elba Maria Ceballo (Doc. 10). Also pending before the Court is Petitioner Mac Tools' Motion to Expedite the Court's Consideration of Petition to Compel Arbitration and Motion to Dismiss (Doc. 16). For the reasons that follow, the Court **GRANTS** Petitioner's Motion to Expedite, **DENIES** Respondents' Motion to Dismiss, and **GRANTS** Petitioner's request for an order compelling Respondents to arbitrate the parties' disputes.

**I.    Background**

Petitioner Mac Tools manufactures professional-grade tools and equipment that are sold nationally through independent distributors. Distributors purchase merchandise from Mac Tools and then sell the merchandise to customers on established routes. In 2007, Smart Angles LLC, a company formed by Andres Diaz III, its sole member, entered into a Mac Tools Distributor

Agreement (the "Distributor Agreement") with Mac Tools for the distribution and sale of professional-grade tools. Although Ms. Ceballo, who is Mr. Diaz's wife, invested personal funds in the distributorship, and was part of the distributorship acquisition process, she did not sign the Distributor Agreement.

The Distributor Agreement sets forth a three step procedure for the resolution of disputes. The parties agreed to first negotiate in good faith. If the matter remained unresolved after negotiating, the parties agreed to attempt to mediate the matter. Finally, if the matter could not be resolved by mediation, then the parties agreed to settle the controversy by arbitration. Pursuant to the Distributor Agreement, this procedure applies to:

> any and all controversies, disputes or claims of any nature whatsoever arising out of or related to this Agreement or any other agreement between you and us, including the breach, termination or validity of any such agreement, or the relationship between you and us and/or the operation of the Business and including any and all controversies, disputes or claims of any nature against us by anyone claiming through you.

(Doc. 2, Ex. A).

In 2008, Mr. Diaz terminated Smart Angels' distributorship business. In 2011, Mr. Diaz alleged that his Smart Angels' distributorship business failed due to the fault of Mac Tools. Pursuant to the Distributor Agreement, and presumably after negotiations failed to resolve the matter, Mac Tools agreed to mediate claims against it made jointly by Mr. Diaz and Ms. Ceballo. Mac Tools asserted claims for non-payment of monies owed by Smart Angels and Mr. Diaz. The mediation was unsuccessful in resolving the claims of the parties.

Ms. Ceballo then filed an action against Mac Tools, and former Mac Tools district manager John Addalia, in New Jersey state court ("state court suit"), seeking, as an "investor" in

2

Smart Angels, to assert Smart Angels' and Mr. Diaz's claims against Mac Tools. In the state court suit, Ms. Ceballo alleges fraudulent inducement and a violation of the New Jersey Consumer Fraud Act. Ms. Ceballo claims that she incurred losses as a result of Mac Tools' "fraudulent sale to [Ms. Ceballo] and her husband of an undisclosed franchised business, in violation of [Federal Trade Commission ("FTC")] Rule 436 and for fraudulent misrepresentations by both commission and omission." (Doc. 2, Ex. B, ¶ 8). Ms. Ceballo alleges that she and her husband were fraudulently induced to commit family monies, as well as her own independent funds, to purchase the Mac Tools distributorship. She further alleges that "the Mac Tools illegal scheme consists of three primary components: the sale of a franchise without proper disclosure in violation of FTC franchise sales regulations, the 'churning' of a previously failed route (List of Stops) and the use of fraudulent income representations." *Id.* at ¶ 14.

On August 9, 2011, Mac Tools removed the state court suit to federal court, asserting federal diversity jurisdiction on the grounds that Mr. Addalia, a New Jersey resident, had been fraudulently added as a defendant only for the purpose of defeating diversity jurisdiction. On August 30, 2011, Mac Tools filed with the New Jersey District Court a motion to dismiss, or, in the alternative, to stay the case pending arbitration. Ms. Ceballo filed a motion to remand. The New Jersey District Court granted Ms. Ceballo's motion and remanded the matter to state court on October 5, 2011, finding that Mac Tools did not meet its burden of showing fraudulent joinder, and leaving unresolved the motion to dismiss and motion to stay.

On October 19, 2011, Mac Tools filed its Petition to Compel Arbitration Pursuant to Federal Arbitration Act § 4, seeking an order of this Court compelling both Mr. Diaz and Ms. Ceballo to arbitrate their disputes with Mac Tools. It is undisputed that the claims arising out of

the relationship between Mac Tools and Mr. Diaz must be arbitrated in accordance with the written arbitration provision, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16. The parties dispute, however, whether Ms. Ceballo, as a nonsignatory under the Distributor Agreement, must arbitrate her claims against Mac Tools. Ms. Ceballo moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Mac Tools' petition for failure to state a claim upon which relief can be granted. Ms. Ceballo argues that her claims against Mac Tools are not subject to the arbitration clause of the Distributor Agreement. Therefore, the merits of Mac Tools' Petition to Compel Arbitration and Ms. Ceballo's Motion to Dismiss are squarely before the Court.

**II.    Standards of Review**

Rule 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"

A court, in considering a 12(b)(6) motion to dismiss, must "construe the complaint in the

4

light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). Although in this context all of the factual allegations in the complaint are taken as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Furthermore, to survive dismissal pursuant to Rule 12(b)(6), a claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 1950. While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Iqbal*, at 1950 (quoting Fed. Rule Civ. Proc. 8(a)(2)). In the final analysis, the task of determining plausibility is "context-specific [and] requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Under the Federal Arbitration Act, 9 U.S.C. § § 1–16 ("FAA"), a written agreement to arbitrate disputes arising out of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The requirements set forth in the FAA were "designed

5

to override judicial reluctance to enforce arbitration provisions, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24–25. The "primary purpose" of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479 (1989).

The FAA provides that "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may seek an order compelling arbitration from any district court "which, save for such agreement, would have jurisdiction under Title 28 . . . of the subject matter of a suit arising out of the controversy between the parties[.]" 9 U.S.C. § 4. In deciding a motion to compel arbitration and stay proceedings in federal court, the Court must determine: (1) whether the parties agreed to arbitrate; (2) the scope of the arbitration agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some but not all of the claims are subject to arbitration, whether to stay the remainder of the proceedings pending arbitration. *Stout*, 228 F.3d at 714.

### III. Discussion

As a preliminary matter, the Court will address Petitioner Mac Tools' Motion to Expedite.

Ms. Ceballo did not file a response to this motion. Because Mac Tools did not file a responsive pleading in the state court suit, Ms. Ceballo obtained an entry of default from the clerk in early 2012.[1] Mac Tools filed a motion to vacate the default and a motion to stay the proceedings until resolution of the Petition filed in this Court. The New Jersey state court granted Mac Tools' motion to vacate but summarily denied the motion to stay, and the matter was reactivated on March 16, 2012. Mac Tools seeks a resolution of both its Petition to Compel Arbitration, and Ms. Ceballo's Motion to Dismiss, before the Petition is potentially mooted by the state court suit. Mac Tools asserts that it has not filed pleadings in the state court suit because of the concern that it may bolster Ms. Ceballo's contention that it has waived its right to arbitrate. The Court finds Mac Tools' arguments for an expeditious resolution of the Motion to Compel and Motion to Dismiss to be persuasive, and therefore promptly resolves the underlying arbitration issue.

At issue is whether Ms. Ceballo must arbitrate her claims against Mac Tools pursuant to the arbitration clause of the Distributor Agreement between her husband, Mr. Diaz, and Mac Tools, despite the fact that she is a nonsignatory under the Distributor Agreement.

Ms. Ceballo argues that the Court should dismiss Mac Tools' Petition to Compel Arbitration because a nonsignatory to an arbitration agreement is not bound by the terms of the agreement absent the existence of exceptional circumstances, which are not present in this case. Ms. Ceballo also argues that, even assuming she is bound by the arbitration provision, Mac Tools has waived any right to arbitrate her claims in the state court suit. Mac Tools argues that, even though Ms. Ceballo is a nonsignatory to the Distributor Agreement, the circumstances of this case

---

[1] Mac Tools asserts that it did not file a responsive pleading because it believed there was a mutual understanding that Ms. Ceballo would not take action in that case in view of the pending Petition in this Court.

7

require that she be compelled to arbitrate her claims against it. Additionally, Mac Tools argues that Ms. Ceballo fails to satisfy her burden of showing that it has waived its right to arbitrate her claims. The issues of whether Ms. Ceballo is required to arbitrate her claims and whether Mac Tools has waived any right to have these claims arbitrated will be separately addressed.

### A. Arbitration of Ms. Ceballo's Claims

It is undisputed that Ms. Ceballo did not sign the Distributor Agreement that contains the arbitration requirement, and thus she is not contractually bound to arbitrate these claims. This fact, however, is not dispositive of whether she must arbitrate her dispute with Mac Tools pursuant to the arbitration provision of the Distributor Agreement. The Sixth Circuit has found that, under certain circumstances, a party may be bound to arbitrate disputes under the terms of a contract that the party did not sign. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003). There are five recognized theories for binding non-signatories to arbitration agreements: "(1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Id.* (citing *Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).

Here, Mac Tools asserts that Ms. Ceballo is estopped from avoiding the arbitration requirement of the Distributor Agreement because her claims seek benefits under the Distributor Agreement and she has manifested an intent to avail herself of the dispute resolution procedures contained in the Distributor Agreement. Ms. Ceballo argues that Mac Tools cannot show that her claims are "inextricably entwined" with Mr. Diaz's claims to render her claims subject to arbitration. In support of her position, Ms. Ceballo also points to language in the Distributor Agreement providing that the "Agreement is personal to the Undersigned Individual." This provision further states in part as follows:

> You understand and acknowledge that the rights and duties set forth in this Agreement are <u>personal to the undersigned individual</u> and that we have granted this distributorship in reliance on the skills, financial capacity and personal character of the undersigned individual. Accordingly, you may <u>not</u> assign this Agreement or any right, responsibility or interest granted to you by this Agreement without our prior <u>written</u> consent. You also may not delegate your duties under this Agreement, transfer all or substantially all of your assets, [or] transfer your Business to a business entity[.]

(Doc. 2-1, p. 19) (Emphasis sic). Ms. Ceballo argues that, pursuant to this language, any third-party, including herself, cannot assume any right or obligation belonging to Mr. Diaz, including the obligation to arbitrate claims against Mac Tools. But this argument misses the mark. Whether Mr. Diaz could assign any right, responsibility or interest under the Distributor Agreement is a distinct issue from whether Ms. Ceballo is obligated to arbitrate her claims against Mac Tools based on equitable estoppel or another common law doctrine.

A nonsignatory may be bound to an arbitration agreement under an estoppel theory when the nonsignatory seeks a direct benefit from the contract while disavowing the arbitration provision. *Javitch*, 315 F.3d at 629 (citing *Thomson-CSF*, 64 F.3d at 778-79). "When only an indirect benefit is sought, however, it is only a signatory that may be estopped from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the underlying contract." *Id.* *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 18 (4th Cir. 2000) ("In the arbitration context, the doctrine [of equitable estoppel] recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.").

9

As Mr. Diaz's wife, Ms. Ceballo was closely involved in the acquisition of the distributorship business. She contributed her own funds in the acquisition. Obviously, the expectation was that the agreement Mr. Diaz reached with Mac Tools would be lucrative and Ms. Ceballo would financially benefit from that contractual relationship. As it turned out, however, the business failed, and Ms. Ceballo and Mr. Diaz correctly, or incorrectly, place the blame on Mac Tools.

Ms. Ceballo clearly sought and expected to benefit from her husband's agreement with Mac Tools; were this not the case, she would not have invested her own funds into the business. And, considering her allegations against Mac Tools, she viewed and treated the acquisition of the distributorship as a collective acquisition, even though she did not sign the Distributor Agreement. Now, she seeks to make claims against Mac Tools that are substantively the same as Mr. Diaz's potential claims against Mac Tools. Their claims are inseparable insofar as they allege misconduct by Mac Tools in the inducement and formation of the distributorship arrangement. In fact, Ms. Ceballo alleges in her complaint filed in the state court suit that Mac Tools fraudulently induced her and her husband to acquire the distributorship business. She specifically alleges that the sale "to [Ms. Ceballo] and her husband" was fraudulent. (*See* Doc. 2-2, ¶ 8).

Thus, even though in form she did not acquire the distributorship business by signing the Distributor Agreement, in substance she viewed the sale as being to her and her husband, which is consistent with her participation in the acquisition of the business. In the final analysis, it would be inequitable to permit Ms. Ceballo to litigate her claims in court when her husband, who is a signatory to the agreement and whose claims are substantively indistinguishable from those of Ms. Ceballo, is bound to arbitrate his claims against Mac Tools. Therefore, the doctrine of equitable

estoppel applies to require Ms. Ceballo to arbitrate her claims against Mac Tools.

### B. Waiver of Right to Arbitrate

Ms. Ceballo argues that Mac Tools has waived any right to enforce the arbitration provision as it relates to her claims. Mac Tools argues that it has demonstrated an intent to arbitrate this matter from the outset.

A "waiver" is generally recognized as "an intentional relinquishment of [a] known right." *American Locomotive v. Gyro Process Co.*, 185 F.2d 316, 318 (6th Cir. 1950). A party may waive its right to arbitrate if it takes actions that are completely inconsistent with reliance on the arbitration agreement or if the party delays asserting its right to arbitrate to such an extent that the opposing party incurs actual prejudice. *Credit Acceptance Corp. v. Davisson*, 644 F. Supp.2d 948, 956 (N.D. Ohio 2009). Because a waiver of the right to arbitration is "not to be lightly inferred," the party seeking to prove waiver bears "a heavy burden of proof." *Id.* (citations omitted).

In determining whether there has been a waiver of the right to arbitrate, courts consider whether the party seeking arbitration has engaged in conduct inconsistent with the right to arbitrate, such as filing responsive pleadings or pretrial motions without asserting a right to arbitration, engaging in extensive discovery and using discovery methods not available in arbitration, litigating merits issues, or filing a counterclaim without asking for a stay. Courts also consider the following factors: the length of delay in invoking arbitration and seeking a stay, the proximity of the trial date, and prejudice to the opposing party. *See Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995); *Reidy v. Cyberonics, Inc.*, No. 1:06-cv-249, 2007 WL 496679 (S.D. Ohio Feb. 8, 2007) (Dlott, J.); *Konica Minolta Bus. Solutions,*

*U.S.A. v. Allied office Products*, No. 2:06-cv-71, 2006 WL 3827461 (S.D. Ohio, Dec. 27, 2006) (Graham, J.).

Ms. Ceballo does not meet her burden of showing that Mac Tools has waived its right to arbitrate. Ms. Ceballo argues that Mac Tools has waived this right by its delay in filing the instant Petition and electing to defend the New Jersey lawsuit in the District Court of New Jersey. More particularly, Ms. Ceballo asserts that the waiver is demonstrated by the 4-month period between the filing of the state court suit (June 29, 2011) and the instant Petition (October 19, 2011). Ms. Ceballo's arguments are unpersuasive, as they fail to consider certain facts that are inconsistent with her waiver argument.

After Ms. Ceballo filed suit in New Jersey state court, Mac Tools timely removed the action to federal court. Ms. Ceballo moved to remand ten days after the matter was removed. Eleven days later, Mac Tools moved to dismiss the action, or in the alternative to stay the matter pending arbitration. In defending against the lawsuit, Mac Tools specifically asserted in part that, even though Ms. Ceballo is not a signatory under the Distributor Agreement, she should be required to submit her claims to arbitration. Thus, after the matter was removed to federal court, Mac Tools' first filing was its motion to dismiss, which contained a request to alternatively stay the proceedings pending arbitration. Approximately one month later, the District Court of New Jersey granted Ms. Ceballo's motion to remand on the basis that the court lacked jurisdiction. Consequently, the court expressly denied without prejudice Mac Tools' motion to dismiss and the alternative motion to stay. Two weeks after this order was issued, Mac Tools filed the instant Petition.

Considering the sequence of events, Mac Tools has acted expeditiously in attempting to

vindicate its right to have Ms. Ceballo's claims against it proceed to arbitration. Therefore, under these circumstances, the Court finds that Mac Tools has not acted contrary to its right to arbitrate, and thus it has not waived its right to arbitrate Ms. Ceballo's claims against it.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Petitioner Mac Tools's Motion to Expedite (Doc. 16), **DENIES** Respondents' Motion to Dismiss (Doc. 10), and **GRANTS** Petitioner's request for an order compelling Respondents to arbitrate the parties' disputes (Doc. 2). Final judgment shall be entered in favor of Petitioner Mac Tools, finding that Respondents claims against Petitioner are subject to the arbitration provision in the Distributor Agreement.

The Clerk shall remove Documents 10 and 16 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

 *s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**